IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ProAssurance Specialty Insurance Company, Inc., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20-cv-1409 ) ) |
| Imperial Realty Company et al., | ) ) |
| Defendants. | ) ) |

Memorandum Opinion and Order

Paula Young, a clinical psychologist working as Clinical Director of the Rogers Behavioral Health Center, slipped and fell on a liquid left on the floor of the women's bathroom at her workplace and was injured. Ms. Young sued Imperial Realty Company ("Imperial"), the operator of her office building at 4711 Golf Road in Skokie, Illinois, in Cook County state court, claiming negligence and violations of the Illinois Premises Liability Act. *See Young v. Imperial Realty Co.*, No. 2018-L-012315 (Ill. Cir. Ct. Nov. 13, 2018); ECF No. 24-4. Imperial then filed a third-party complaint against Ms. Young's employer, Rogers Memorial Hospital, Inc. ("Rogers"), seeking contribution. ECF No. 24-6.

The instant insurance dispute relates to a health care facility liability insurance policy issued by Plaintiff

ProAssurance Specialty Insurance Company, Inc. ("ProAssurance") to Ms. Young's employer, Rogers, Policy No. CH173. ECF No. 24-2. ProAssurance filed this suit seeking a declaration that it does not have a duty to defend or indemnify Rogers or Imperial under that insurance policy in connection with the underlying litigation in Cook County state court. ECF No. 24. Imperial, for its part, filed counterclaims seeking an opposite declaratory judgment—that ProAssurance does have a duty to defend and indemnify Imperial under the policy. ECF No. 29 ¶¶ 30-48.

Two motions are currently pending: Imperial's motion for summary judgment, ECF No. 40, and ProAssurance's cross motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), ECF No. 42. Because I conclude that ProAssurance has no duty to defend or indemnify Rogers or Imperial under the insurance policy at issue, Imperial's motion for summary judgment is denied and ProAssurance's motion for judgment on the pleadings is granted.

I.

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. Where, as here, "the movant seeks to 'dispose of the case on the basis of the underlying substantive merits[,] . . . the appropriate standard is that applicable to summary judgment, except that the court may only consider the contents of the pleadings.'" *U.S. Specialty Ins. Co. v. Vill. of Melrose Park*,

455 F. Supp. 3d 681, 687 (N.D. Ill. 2020) (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). Accordingly, "I apply the same standard to each of the pending motions, except that I may consider undisputed facts outside of the pleadings and their attachments to resolve [the] summary judgment motion." *Admiral Ins. Co. v. Anderson*, No. 19 C 3468, 2021 WL 1172241, at *3 (N.D. Ill. Mar. 29, 2021). That is, I will grant the motions only if "no genuine issues of material fact remain to be resolved and . . . the [movant] is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

As a preliminary matter, the parties disagree as to whether Illinois or Wisconsin law applies to this dispute. "As this suit was filed in Illinois, Illinois's choice of law rules will govern." *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford*, 152 F. Supp. 2d 1026, 1032 (N.D. Ill. 2001) (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000)). Under Illinois's rules, "an express choice of law clause in an insurance policy w[ill] determine which state's law to apply." *Id.* (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995)). Here, the policy contains the following choice-of-law clause: "The policy shall be construed, and the legal relations between us and the insureds (and anyone claiming any interest in or rights under the policy) shall be determined, in accordance with the laws of the State in which the address of the

3

policyholder, as specified in the Coverage Summary, is located . . . ." ECF No. 24-2 at 13 § M (emphasis omitted). The coverage summary lists an address for the policyholder, Rogers, in Oconomowoc, Wisconsin. *Id.* at 3 § 1. Accordingly, pursuant to the policy's choice-of-law provision, Wisconsin law will apply.

Under Wisconsin law, insurance contracts are interpreted "in the same manner as other contracts—to give effect to the intent of the contracting parties." *Water Well Sol'ns Serv. Grp., Inc. v. Consolidated Ins. Co.*, 881 N.W.2d 285, 291 (Wis. 2016). Insurance contracts often establish (1) an insurer's duty to defend against claims for damages, and (2) the duty to indemnify the insured against damages or losses. *Id.* When considering an insurer's duty to defend, "[l]ongstanding case law requires a court . . . to compare the four corners of the underlying complaint to the terms of the entire insurance policy." *Id.* The "four-corners rule" precludes the court's consideration of extrinsic evidence. *Id.*

There is a three-step process for comparing the underlying complaint to the terms of the policy in duty-to-defend cases, explained by the Wisconsin Supreme Court as follows:

> First, a reviewing court determines whether the policy language grants initial coverage for the allegations set forth in the complaint. If the allegations set forth in the complaint do not fall within an initial grant of coverage, the inquiry ends. However, if the allegations

4

fall within an initial grant of coverage, the court next considers whether any coverage exclusions in the policy apply. If any exclusion applies, the court next considers whether an exception to the exclusion applies to restore coverage. If coverage is not restored by an exception to an exclusion, then there is no duty to defend.

*Id.* at 291-92 (internal citations omitted). Any ambiguity in the policy language is construed in favor of the insured. *Id.* at 291.

"The duty to indemnify is fairly straightforward. An insurer must indemnify an insured against losses that are covered under the terms of the policy." *Olson v. Farrar*, 809 N.W.2d 1, 7 (Wis. 2012). "It is . . . well-established than an insurer's duty to defend its insured is broader than its duty to indemnify. . . . '[T]he insurer is under an obligation to defend only if it *could be* held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.'" *Water Well*, 881 N.W.2d at 292 (emphasis in original) (citations omitted).

## II.

ProAssurance's motion for judgment on the pleadings seeks, in part, a declaration that it has no duty to defend or indemnify Rogers in the underlying action. Accordingly, I turn first to the question of the duty to defend or indemnify Rogers, but I need not

5

linger long on the question. After ProAssurance filed its motion, Rogers filed a notice in which it offered that it "has no objection to Proassurance's request for declaratory relief in this matter," and "does not oppose Proassurance's Motion . . . or any relief requested therein."[1] ECF No. 44 ¶¶ 4-5. Where a party fails to oppose a Rule 12(c) motion, it constitutes a waiver. *See Wojtas v. Capital Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007). Accordingly, ProAssurance's motion for judgment on the pleadings is granted as to Defendant Rogers.

### III.

I turn next to the primary focus of both pending motions: whether there is a duty to defend Imperial under the policy. Imperial argues first that it qualifies as an "insured" under the policy as the "real estate manager" for the office building. The insurance policy includes under its definition of "insured": "any organization while acting as a real estate manager for the policyholder." ECF No. 24-2 at 23 (emphasis omitted). The parties agree that Imperial served as a property manager for CFO2 Skokie, LLC ("CFO2"), the landlord of the building at 4711 Golf Road where Ms. Young's injury occurred. *See* ECF No. 41 at 14; ECF No. 50 at

---

[1] Rogers's filing mistakenly refers to ProAssurance's "Motion for Summary Judgment"; ProAssurance has filed no such motion. *See* ECF No. 44 ¶ 5. I assume for instant purposes that Rogers intended to reference ProAssurance's motion for judgment on the pleadings, ECF No. 42.

6

1. ProAssurance contends, however, that Imperial does not fall within the policy's definition of "insured" because Imperial served as the landlord's property manager, rather than a property manager "for the policyholder," Rogers. I agree. The plain language of the policy suggests that the contracting parties intended to provide coverage for real estate managers hired by Rogers, rather than for any and all real estate managers from whose services Rogers or its employees happened to benefit. At least one Wisconsin court interpreting a similar policy has agreed. *See Mathison v. Kulhanek*, No. 2019AP1568, 2021 WL 329930, at *3 (Wis. Ct. App. Feb. 2, 2021).

Imperial also argues that it is covered under the policy's blanket additional insured endorsement. That endorsement modified the policy's general liability coverage to add as additional insureds "[a]ll persons or organizations required to be named as additional insureds by written contract with the policyholder." ECF No. 24-2 at 72. Imperial points to a provision in the lease agreement between Rogers and its landlord, CFO2, which required Rogers to maintain, inter alia, general-liability and umbrella-liability insurance, and further required such insurance to "name Landlord (or any successor) [and] Landlord's property manager . . . as 'additional insureds.'" ECF No. 24-3 § 14(A). Imperial contends that because Rogers was required to name Imperial, the property manager, as an additional insured under its lease,

7

Imperial qualifies as an additional insured under the policy's blanket additional insured endorsement.

The endorsement, however, qualifies the inclusion of any additional insureds. The additional insureds are expressly covered "only with respect to liability arising out of the operations of the policyholder," and further, the "insurance does not apply to any liability arising out of the additional insured's own acts or omissions." ECF No. 24-2 at 72. The underlying complaint, filed by Ms. Young against Imperial, does not contain any allegations pertaining to Rogers's acts or omissions—it focuses exclusively on Imperial's conduct. *See generally* ECF No. 24-4. ProAssurance argues that as a result, under the four-corners rule, it has no duty to defend Imperial.

Imperial counters that the court should consider the allegations in the third-party complaint Imperial filed against Rogers in the underlying case, which asserts that Rogers was negligent. *See* ECF No. 24-6. ProAssurance disagrees. The Wisconsin Supreme Court has stated generally that "only two documents are germane in any four-corners analysis: the insurance policy and the complaint against the insured." *Marks v. Houston Cas. Co.*, 881 N.W.2d 309, 322 (Wis. 2016). Wisconsin courts do not appear to have directly addressed, however, whether third-party complaints may be considered. *See Smith v. Anderson*, 893 N.W.2d 790, 793 (Wis. 2017) (Abrahmson, J., dissenting) (lamenting

8

majority's decision to dismiss appeal and commenting that resolving the case would have been "law-developing" in that it "would have given th[e] court the opportunity to explain the proper application of the four-corners rule in duty-to-defend cases involving third-party complaints and answers"). But in other jurisdictions, courts have held that while third-party complaints may often be considered for purposes of the four-corners analysis, complaints filed by a party seeking coverage as an additional insured should not be included because such complaints may be self-serving. *See, e.g.*, *Nat'l Fire Ins. of Hartford v. Walsh Constr. Co.*, 909 N.E.2d 285, 291-93 (Ill. App. Ct. 2009); *Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, No. 09-1115, 2010 WL 4909600, at *8 (E.D. Penn. Nov. 30, 2010); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, No. 4:08-CV-135-Y, 2009 WL 3334885, at *4 (N.D. Tex. Oct. 14, 2009), *vacated and remanded on other grounds*, 647 F.3d 248 (5th Cir. 2011); *see also Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) (collecting cases under Illinois law); *but see Nor-Son, Inc. v. W. Nat'l Mut. Ins. Co.*, No. A11-2016, 2012 WL 1658938, at *4 (Minn. Ct. App. May 14, 2012). I find these courts' reasoning persuasive. Accordingly, because Imperial is a party seeking coverage as an additional insured, I decline to consider Imperial's third-party complaint against Rogers for purposes of the four-corners rule.

Without the allegations in the third-party complaint, there is no allegation of any negligent act or omission by Rogers in the underlying suit. Accordingly, Imperial does not fall within the definition of "insured" in the blanket additional insured endorsement. Because I have determined Imperial is not covered under the policy, my inquiry ends, *see Water Well*, 881 N.W.2d at 291, and I conclude that ProAssurance has no duty to defend Imperial under the policy.

IV.

The next question I must consider is whether ProAssurance has a duty to indemnify Imperial.[2] Although, in general, an insurer's duty to defend is broader than its duty to indemnify, "there may be isolated instances in which an insurer has no duty to defend based on the complaint's allegations, but nevertheless owes a duty to indemnify based on extrinsic evidence considered later during a coverage determination." *Water Well*, 881 N.W.2d at 297 n.17; *see also Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006) (explaining similar rule under Illinois law: "the fact that the duty to defend is generally broader than the duty to indemnify does not mean . . . that where there is no duty to defend there can be no duty to indemnify").

---

[2] ProAssurance has informed the court that the underlying state-court case has settled. *See* ECF No. 52 ¶ 3. Accordingly, the duty-to-indemnify issue is ripe for resolution.

10

As noted above, to the extent facts developed showing that Rogers was, in fact, negligent, as alleged in Imperial's third-party complaint, Imperial would no longer be excluded under the policy's blanket additional insured endorsement, and it could therefore qualify for coverage.

Even assuming, however, that Imperial qualified in this way as an insured under the policy, there can be no duty to indemnify in light of Exclusion 2(e)(1) to Coverage A, which governs bodily-injury and property-damage liability. *See* ECF No. 24-2 at 16. Under Exclusion 2(e)(1), the coverage does not apply to "[b]odily injury to . . . [a]n employee of an insured arising out of and in the course of his or her employment or duties." *Id.* The parties agree that Ms. Young was an employee of Rogers, an insured, at the time of the incident. *See* ECF No. 43 at 11; ECF No. 51 at 13. Imperial disputes, however, that Ms. Young's injury, which took place in the restroom at her workplace, arose out of her employment or duties.

Under Wisconsin law, "whether an employee acts within the scope of his or her employment is generally a fact issue to be decided by a jury." *Stephenson v. Universal Metrics, Inc.*, 633 N.W.2d 707, 713 (Wis. Ct. App. 2001). However, where there are no disputed material facts, courts have resolved dispositive motions regarding the scope of employment. *See, e.g., B.A. v. Bohlmann*, No. 09-cv-346-wmc, 2011 WL 13359272, at *7 (W.D. Wis. Feb. 24,

11

2011). Because the parties here agree on the material facts—that Ms. Young was injured when she slipped and fell while she was using the restroom at her workplace—I proceed to the merits. *See* ECF No. 50 at 7, ECF No. 51 at 13.

An act is "within the course of employment" if, "upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated." *Scott v. Min-Aqua Bats Water Ski Club*, 255 N.W.2d 536, 538 (Wis. 1977). In contrast, an act is outside the scope of employment "if the employee does something that 'is different in kind from that authorized [by the employer], far beyond the authorized time or space limits [established for the employment], or too little actuated by a purpose to serve the' employer." *Stephenson*, 633 N.W.2d at 712 (citation omitted). Wisconsin courts have not specifically addressed whether an employee's use of the restroom at work falls within the "scope of employment" in the context of insurance contract interpretation; however, courts in other jurisdictions have found that using the restroom is reasonably related to employment because "using the toilet [is a] normal action[] people must take while working." *N. Atl. Cas. & Sur. Ins. Co. v. William D.*, 743 F. Supp. 1361, 1365 (N.D. Cal. 1990); *see also Southern-Owners Ins. Co. v. Warren*, No. 6:16-cv-593-Orl-40DCI, 2017 WL 2889693, at *5 (M.D. Fla. Apr. 13, 2017), *report and recommendation adopted*, No. 6:16-cv-593-Orl-40DCI, 2017 WL

12

2929381 (M.D. Fla. Apr. 19, 2017) ("[A] restroom break is generally considered a personal comfort that is incidental to one's employment."). I am persuaded by these courts' reasoning. I conclude that Ms. Young's use of the restroom was a "natural" incident of her work, and accordingly, that her injury arose out of her employment. To the extent Imperial qualifies as an insured under the policy, Exclusion 2(e)(1) bars coverage. ProAssurance, therefore, has no duty to indemnify Imperial.

V.

For the foregoing reasons, Imperial's motion for summary judgment [40] is denied and ProAssurance's motion for judgment on the pleadings [42] is granted.

                                     **ENTER ORDER:**

                                     */s/ Elaine E. Bucklo*
                                     **Elaine E. Bucklo**
                                     United States District Judge

Dated: June 22, 2021